THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES McCRAY, a/k/a James Earl McCray, a/k/a James McCary, Defendant-Appellant.

First District (3rd Division)    No. 77-258

Opinion filed April 19, 1978.—Rehearing denied June 21, 1978.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Suzanne Philbrick, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The defendant, James McCray, was found guilty of robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—1) after a jury trial in the circuit court of Cook County. He was sentenced to a term of five years probation. The issues for review are whether the defendant was found guilty beyond a reasonable doubt and whether he was deprived of a fair trial as a result of prosecutorial misconduct.

The complainant, Alfred Minor, testified that on September 5, 1973, he had been to a party at a friend's house, leaving at about 1:30 a.m. Although he admitted drinking alcoholic beverages at the party and being "high," he denied being "drunk." After the party he was driven by a

friend to a bus stop near the 1600 block of West Madison in Chicago. After waiting about five minutes for a bus, he was approached from behind by some men. He originally thought that there were three men, but as he later found out, there were only two. They hit him on the back of the head and demanded his money. Upon his refusal, they struck him repeatedly and knocked him to the ground. At this time two officers with the Cook County Sheriff's Department, who happened to be passing by, stopped to investigate the altercation. After short chases, these officers brought back two men who Minor recognized as his assailants. He testified they took his wallet containing identification papers and $156 in cash.

The complainant testified the entire incident took three or four minutes, but at a preliminary hearing he had stated the incident took five seconds. He explained the discrepancy by saying that he was "all shook up, beat up, bleeding" and did not know actually how long it took. He also testified he could have stated at the preliminary hearing that he was too drunk to know who hit him. On cross-examination he insisted that at the time of the incident, he recognized the individuals brought back by the police officers as the ones who robbed him, although at the preliminary hearing, eight weeks after the incident, he said he probably could not identify the people involved. He admitted the police had looked for him on numerous occasions to testify in this case, but he had not made himself available.

Officer Poladian, a warrant officer with the Cook County Sheriff's Department, testified that about 2:15 a.m. he was driving with his partner in an unmarked sheriff's car in the vicinity of Madison Street and Ashland Avenue serving warrants. As they approached the intersection he observed three men struggling. The complainant was being held down by one assailant while a second struck him repeatedly and searched through his pockets. Officer Poladian first noticed the men when he was 10 feet from the intersection, and he was about three feet away when he saw exactly what was happening. He got out of the car, identified himself as a police officer and ordered the men to halt, but the two assailants ran. Poladian chased the defendant, who ran west on Madison Street and apprehended him. Poladian positively identified the defendant in court as "[t]he young gentleman sitting between the two public defenders over there wearing the brown and white shirt." Poladian stated that during the chase he never lost sight of defendant and that he saw defendant throw a wallet into a vacant lot. He brought the defendant back to the intersection where Alfred Minor identified him as one of the robbers. Poladian recovered the wallet. Although it contained three identification cards belonging to Minor, no money was found in the wallet or on the defendant.

Officer Curtis Jones testified he was working with Officer Poladian

when they observed a fight between three persons at the intersection of Ashland and Madison. A man was holding the complainant and another man was striking him repeatedly on the back of the head and body. He identified the defendant as one of the two individuals attacking complainant. Officer Jones testified that when he and his partner identified themselves as police officers, the two assailants ran. The defendant ran west on Madison and the other man ran south on Ashland. On cross-examination Officer Jones testified that he did not remember testifying at the preliminary hearing that both assailants ran west, as the transcript of that hearing indicated.

The defendant testified he was standing next to a fire hydrant by himself when he noticed two persons coming toward him across the street. He turned around as they approached him, and the next thing he noticed was that they were lying down. At that time the officers jumped out of the car and told him to stop. He ran about five feet and then complied. One officer told him to lie on the ground, and the other officer ran past him chasing another individual. The defendant believed that he was arrested because he ran when the officers jumped out of the car. He denied robbing or hitting the complainant and stated that before standing on the corner he had gone to get some cigarettes, but the store was closed.

On cross-examination the State after establishing that the defendant had completed the second year of high school, asked him, "Now at that time did you have any occupation other than robbing people?" There was an objection and a motion for a mistrial. The court denied the motion, sustained the objection and directed the jury to disregard the question. The subject was abandoned.

The defendant contends he was not proved guilty beyond a reasonable doubt because of the inconsistencies in the testimony of the complaining witness and the two police officers. The complaining witness, although somewhat self-contradictory, did identify the defendant as one of the assailants. Poladian testified that he did not lose sight of the defendant as he pursued him and he saw him throw the wallet into a vacant lot. This wallet was later recovered and was shown to belong to the complaining witness. Jones basically corroborated Poladian's testimony.

■■■ The resolution of these inconsistencies in the evidence revolves around the credibility of the witnesses. It is preeminently a function of the jury to determine the credibility of the witnesses and to assess the proper weight to be afforded to their testimony. (*People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733, 734.) We cannot say that the jury's assessment of these witnesses was incorrect. If the jury believed these witnesses, there is sufficient evidence for a conviction.

The defendant next contends that prejudicial error occurred when the State established that the defendant lived in a poor neighborhood and had a limited education, and then asked if he had "[a]ny occupation other

than robbing people." The defendant asserts that the prejudice was compounded when Poladian identified him by stating that he was seated between "the two public defenders." The defendant says that the only inference to be drawn was that he was uneducated, poor, and could only obtain money by robbery.

The State cites *People v. Cavanaugh* (1957), 18 Ill. App. 2d 279, 152 N.E.2d 266, as holding that a trial judge's action in sustaining a defendant's objections to leading questions and instructing a jury to disregard answers to them is sufficient to mitigate the prejudice that the unfair questions and answers engendered. The reviewing court in that case noted "this is about all that can be done" and found that no substantial right of the defendant had been invaded by the leading questions because of the trial court's procedure. However, we cannot accept the State's suggestion that this same procedure can erase the prejudice prompted by the prosecution's rhetorical question concerning the defendant's occupation. The effect of leading questions can hardly be equated with the effect of the prosecution's inquiry in this case.

The State also cites *People v. Terry* (1976), 38 Ill. App. 3d 517, 347 N.E.2d 869, where, in a prosecution for purse snatching, the prosecutor suggested, in the record, that the defendant might have engaged in other instances of purse snatching. The majority opinion held such innuendo by the prosecution was error but not prejudicial error. Because it was a single isolated question, which the judge instructed the jury to ignore, and because the evidence of the defendant's guilt was overwhelming, the court found that the effect of the statement was minimal. The State contends the present situation is identical to *Terry*.

■■ We do not agree. The statement by the prosecutor was inexcusable. The resolution of the conflict between the testimony of the three witnesses for the State and the defendant revolved around their credibility. As held in *People v. Scalisi* (1926), 324 Ill. 131, 144, 154 N.E. 715, 720, such prosecutorial misconduct "strongly tended to lessen the credibility of [the defendant], and striking it from the record could not eradicate it from the minds of the jurors." We believe that the prosecutor's comments, characterizing the defendant as a professional robber, within the context of this trial, prevented the jury from dispassionately evaluating the defendant's testimony. Such a distortion may have invaded a substantial right of the defendant. (*People v. Cavanaugh*, at 295.) For this reason the judgment of the circuit court of Cook County must be reversed and the cause remanded for a new trial.

Reversed and remanded.

SIMON and McGILLICUDDY, JJ., concur.