THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY KELLY, Defendant-Appellant.

First District (3rd Division)   No. 81—2438

Opinion filed July 10, 1985.

Karen Daniel, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael Shabat, Marie Quinlivan, and LuAnn Rody, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Larry Kelly, was convicted of armed robbery by a jury and sentenced to 18 years in the Illinois Department of Corrections. On appeal defendant contends that (1) his arrest and the search of his car were illegal (2) the admission of three guns into evidence was improper and (3) he was prejudiced by the prosecutor's opening statement and closing argument. We affirm.

The victim, Willie Perkins, testified that on March 2, 1981, he and two friends, Anthony and Tommy Hickey, were at the home of Anthony and Tommy's sister. While there, the Hickey brothers conversed in the kitchen where Perkins could not hear them. Someone knocked at the door, and Anthony opened the door just wide enough so that he could slide out. Anthony remained in the hall for a couple of minutes. Perkins could not see who was in the hall. When Perkins and the Hickey brothers then left the apartment to go to Perkins' car, which was parked in the alley, the Hickeys walked approximately six feet ahead of Perkins. As Perkins approached the alley from the gangway, he heard someone say, "[H]old it, Slim." Turning, he saw a man wearing a red and white ski mask and holding a sawed-off shotgun. The man told him to lie on the ground, and he threatened to kill Perkins if he moved. The man took Perkins' handgun from him as well as $160 in cash, including three $50 bills. He did not, however, search Anthony or go near Tommy.

The robber ordered the Hickeys and Perkins to get in Perkins' car. They complied, and Perkins started driving up the alley. Perkins

watched the man out his window, and when the robber disappeared from the alley, Perkins started to back his car to see in which direction the man had gone. The robber then jumped out of the gangway and fired twice. Perkins pulled forward, then backed up again when the robber entered the gangway. This time the robber jumped out and started running toward the car as he fired two more shots. When Perkins saw the robber, he put the car in forward gear and accidently ran into a garage. The Hickey brothers jumped out and ran in the direction of the robber.

Perkins drove to a lounge at 16th Street and Homan, where he called the police. Two uniformed officers arrived in a squad car with Anthony in the back seat. Perkins gave the police a description of the robber.

Approximately three hours after the incident occurred, Perkins went to a tavern called the Bucket of Blood. There, he spoke with Charles Jackson, and he then went to 19th Street and Kedzie to again call the police. Two plainclothes policemen came, and Perkins gave them the name of Ricky Kelly or Little Rick and told them that Kelly had a blue Cadillac and could be found near the Bucket of Blood. Subsequently, Perkins and Jackson were taken in a squad car to the Bucket. Perkins exited the car, and looking through a crowd of approximately 20 people, he pointed out defendant as wearing the same clothes as the robber. When defendant denied committing the crime, Perkins stated that he recognized the robber's voice.

Officer Jude Evans testified that he responded to the initial call regarding an armed robbery and that he spoke with Perkins and Anthony Hickey. He also responded to the later call that Perkins had additional information. After speaking with Perkins and Jackson, he went to 16th Street and Kedzie to look for Little Rick, who, according to Perkins, had perpetrated the robbery. The officer looked for an older model blue Cadillac and saw one parked on the street facing the wrong direction. Defendant was in the driver's seat, and Audrey Hickey was next to him. Anthony Hickey was in the back with another female. The officer saw defendant hand something to Anthony. Everyone was ordered out of the car. Defendant and Anthony were searched, and a .16-gauge shotgun shell was found on Anthony. A search of the car revealed a .12-gauge shotgun shell stuck in the driver's seat. After Perkins arrived and identified defendant, the officer placed defendant under arrest and brought him and Anthony to the 10th District.

Officer Evans further testified that after defendant was given his *Miranda* warnings, he stated that he was not the trigger man in the

robbery but only the lookout, and he had split the proceeds with the Hickeys. Defendant identified the gunman as Anthony Mack, but when Perkins viewed Mack, he was unable to identify him. Finally, the officer stated that after asking defendant's girlfriend, Audrey Hickey, if she knew about the robbery and the location of the weapons involved in the robbery, he proceeded to the first-floor apartment at 3105 West 15th Street. At that address he recovered a .12-gauge sawed-off shotgun, a .16-gauge sawed-off shotgun and a pistol. Also, two live .12-gauge shells were recovered, one of which was in the shotgun.

The final witness to testify was a handwriting expert. She testified that a letter received by Perkins had been written by defendant. The letter was read to the jury, and in it the author apologized for the robbery and asked to make a deal so that he would not have to go to the penitentiary again.

Defendant first argues that his arrest and the search of his car were not based on probable cause, and therefore the fruits from the illegal arrest and search, Perkins' out-of-court and in-court identifications of defendant, defendant's statement to the police, and the shotgun shell found in defendant's automobile, should have been suppressed. In support of his argument, defendant states that the arrest and search were improper because the arresting officer did not know the underlying basis for the citizen-informer's conclusion that defendant had committed the armed robbery. We reject this argument.

At the hearing on defendant's motion to quash his arrest and suppress the evidence, defendant testified that on the evening of March 2, he had parked his car, a light green Cadillac, the wrong way in the parking lane in order to give another car a "jump." Anthony Hickey and two females were in the car. According to defendant, he was standing by the open hood to his car when police officers approached, told him that he had robbed someone and asked to search the car. Defendant did not give his permission. Defendant further testified that he did not hand anything to Hickey. The officers conducted a pat-down search of Hickey and himself. He was not handcuffed at this time. When the squad car arrived with Perkins and Jackson, Jackson jumped out and started yelling that defendant had robbed Perkins. The officers then placed defendant and Hickey under arrest. Defendant also testified that Perkins at first said that defendant was not the robber, but after talking to the officers several times, he stated that defendant was the robber.

Officer Evans testified that the second time he made contact with Perkins on the night of the occurrence, Perkins stated that he found

out that it was Little Rick who had robbed him, that Little Rick hangs out near the Bucket, that Little Rick was seen with Anthony Hickey or dividing money with unknown Negroes, and that Little Rick would probably be in an older model blue Cadillac. Perkins told the officer that his information came from Charles Jackson. The officer asked Jackson if this information was true, and he replied that it was. The officer did not inquire as to the basis for Jackson's knowledge.

Officer Evans further testified that he went to the Bucket, where he saw an older blue Cadillac facing the wrong way. Defendant was in the driver's seat, and Audrey Hickey was next to him. Anthony Hickey was in the back with another female. The hood of defendant's car was not open, and no jumper cables were visible. As he approached the car, the officer saw defendant hand something to Anthony. A pat-down search led to a recovery of a .16-gauge shotgun shell from Anthony, and a search of the car led to the recovery of a .12-gauge shotgun shell that was stuck in the front seat. When Perkins arrived, he did not speak to anyone prior to identifying defendant. No police were standing next to defendant at the time the identification was made. The officer stated that he placed defendant under arrest before taking him to the 10th District.

Willie Perkins testified regarding the description of the robber he gave the officers and the information that he gave the officers which resulted from his conversation with Jackson. Further, he testified that when the police drove him to the area of the Bucket, they told him that there would be a crowd of people and that he should pick out the robber if he saw him. He first identified defendant on the basis of his clothing and reconfirmed the identification after hearing defendant speak.

Charles Jackson testified that on March 2, his sister told him that Perkins was being set up for a robbery. Jackson later saw Perkins at the Bucket and upon learning that he had been robbed, Jackson informed him that defendant was the robber. When Perkins went to call the police, Jackson accompanied him. The witness denied pointing out defendant to Perkins at the time Perkins made his identification.

Defendant contends that since the arrest and search were based on information supplied by an informer, the information had to meet the "basis of knowledge" and "veracity or reliability" requirements of the so-called *Aguilar-Spinelli* test (see *Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514; *Spinelli v. United States* (1969), 393 U.S. 410, 416, 21 L. Ed. 2d 637, 643, 89 S. Ct. 584, 589) or the more recent "totality of the circumstances" ap-

proach adopted in *Illinois v. Gates* (1983), 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.

In *Gates*, the court abandoned the rigid "two-pronged" *Aguilar-Spinelli* test for determining whether a partially corroborated informant's tip establishes probable cause for the issuance of a search warrant and replaced it with the more flexible "totality of the circumstances" test. In support of its decision, the court referred to *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, and *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329, where the search and the arrest, respectively, were made without warrants. These cases were cited as examples of how corroboration of details of an informer's tip by independent police work has always played an important role in the totality of circumstances analysis that traditionally had informed probable cause determinations. (*Illinois v. Gates* (1983), 462 U.S. 213, 241-42, 76 L. Ed. 2d 527, 550, 103 S. Ct. 2317, 2334.) The *Gates* court quoted language from *Jones* where the court said that even in making a warrantless arrest an officer " 'may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.' " (*Illinois v. Gates* (1983), 462 U.S. 213, 242, 76 L. Ed. 2d 527, 551, 103 S. Ct. 2317, 2334, *quoting Jones v. United States* (1960), 362 U.S. 257, 269, 4 L. Ed. 2d 697, 707, 80 S. Ct. 725, 735.) In *Draper*, the court upheld a warrantless arrest based solely upon an informant's statement that the defendant was peddling narcotics as corroborated by the fact that the informant's description of the defendant's appearance and of where defendant would be on a given morning agreed with the officer's observations. *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; see *Illinois v. Gates* (1983), 462 U.S. 213, 242-43, 76 L. Ed. 2d 527, 551, 103 S. Ct. 2317, 2334.

In the present case, the State argues that the information supplied by Jackson was not the sole basis for defendant's arrest. Rather, the information merely caused Officer Evans and his partner to go to the area where the alleged offender was last seen. Moreover, the State argues, the initial contact between the police and defendant was an investigatory stop, not an arrest. Defendant's arrest occurred only after probable cause had been established. We agree.

Based on the information given by Perkins and Jackson, Officer Evans and his partner proceeded to the area where the Bucket was located. Officer Evans testified that he there saw defendant sitting in a blue Cadillac which was illegally parked. As he approached the car,

the officer saw defendant hand something to Anthony Hickey. A pat-down search of the two men led to the recovery of a shotgun shell from Anthony, who said that defendant had given it to him. A search of the car led to the shotgun shell found stuck in the driver's seat.

■■ We believe that these facts show that the police properly conducted the type of investigatory stop permitted under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 107—14). At the time defendant was "stopped," he was guilty of a traffic violation. The officer was then able to observe that defendant's clothes matched the description given by the victim. Further, the officer knew that a shotgun had been used in the robbery, and Anthony stated that the shell recovered from him had been handed over by defendant. *Terry* specifically authorizes a protective search for weapons in the absence of probable cause to arrest, and even defendant described the searches of himself and Anthony as pat-downs. Similarly, the search of the passenger compartment of defendant's car was justified as a protective search for weapons since the officers knew that the robber had used a shotgun and had taken a pistol from Perkins. The search was necessary to protect not only the police, but also the victim, who was nearby and would be brought to make an identification. See *Michigan v. Long* (1983), 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469.

Although defendant argues that he was arrested following the pat-downs, the evidence does not support his contention. Defendant was not handcuffed at this time. Perkins testified that when he arrived to make an identification, no officers were standing near defendant. Defendant, himself, testified that he was not placed under arrest until after the identification. Moreover, even though the police might have detained defendant for more than a few minutes, the Supreme Court has determined that there are no rigid time limitations on *Terry* stops. In *United States v. Sharpe* (1985), 470 U.S. ___, ___, 84 L. Ed. 2d 605, 615, 105 S. Ct. 1568, 1575, the court states that in assessing whether a detention is too long in duration to be justified as an investigatory stop, it is appropriate to examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." Here, defendant was detained within 2½ hours after the armed robbery occurred, so that the victim, who was only a few blocks away, could be brought to identify him. We conclude that defendant's detention was not unnecessarily prolonged and was not tantamount to an arrest.

■ Since we have determined that the police conducted a valid investigatory stop, we must next decide whether the information acquired thereafter gave rise to probable cause to arrest defendant. Clearly, under the *Gates* "totality of the circumstances" test, the police had probable cause to make the arrest. The information supplied by Jackson was corroborated by the shotgun shells, defendant's clothing, and Perkins' identification. We therefore conclude that defendant's arrest was proper.

In view of our determination that defendant's arrest was valid, we must reject defendant's argument that the shotgun shell found in defendant's vehicle, Perkins' identifications of defendant, and defendant's statement to the police should have been suppressed as fruits of an illegal search and arrest. All of this evidence was properly admitted at trial, and, when considered with the other evidence admitted, supports the jury's verdict that defendant was proved guilty of armed robbery beyond a reasonable doubt.

■ Defendant next argues that he was prejudiced by the admission into evidence of the three guns and two shotguns shells recovered by the police at 3105 West 15th Street. According to defendant, the most serious prejudice resulted through the use of implied hearsay, which linked defendant to the weapons used in the robbery. At trial, Officer Evans testified that he asked Audrey Hickey, defendant's girlfriend, if she knew about the robbery and whether she knew where the weapons used in the robbery and the pistol taken from the victim could be found. The officer further testified that after speaking to Audrey, he proceeded to 3105 West 15th Street where he recovered a .12-gauge sawed-off shotgun, a .16-gauge sawed-off shotgun and two live .12-gauge shells, as well as the pistol taken from Perkins during the robbery. There was no testimony regarding Audrey's reply to Officer Evans' question, and there was no testimony linking defendant to the 3105 address. Defendant argues that the only link between himself and the weapons resulted from the improper use of implied hearsay and that the State improperly relied upon this implied hearsay during closing argument to convince the jury that there was a connection between defendant and the weapons.

Initially, we address the propriety of Officer Evans' testimony. The officer limited his testimony to the bare occurrence of the conversation and his subsequent activities. An officer's testimony regarding an investigatory procedure that was entirely within his knowledge is not impermissible hearsay evidence as long as the officer does not testify to the substance of a conversation with a third party. (*People v. Meredith* (1980), 84 Ill. App. 3d 1065, 1077, 405 N.E.2d 1306, 1315;

see *People v. Johnson* (1980), 94 Ill. App. 3d 200, 210, 418 N.E.2d 768, 776; *People v. Sanders* (1976), 37 Ill. App. 3d 236, 239, 345 N.E.2d 757, 759.) We therefore conclude that the testimony given by Officer Evans was proper.

■ Next, we look at the State's use of Evans' testimony in its closing argument. Defendant points to two instances where he claims that the State impermissibly used the testimony as substantive evidence to link defendant to the weapons. In the first instance, however, the prosecutor merely stated that after speaking with Audrey, Evans proceeded to the address where the weapons were found. Since we have determined that the testimony regarding these events was properly admitted, the statement was proper. In the rebuttal argument, however, the prosecutor did argue that Audrey knew where defendant put the guns after the robbery. While this comment was not proper, no objection was made. We do not believe that this isolated comment is sufficient to warrant reversal, especially since the .16-gauge sawed-off shotgun was not admitted into evidence, defendant did not object to the admission of the .12-gauge sawed-off shotgun and the victim's pistol into evidence, and there was other evidence which tended to connect the weapons to defendant, such as the .12-gauge shell recovered from defendant's car and Perkins' identification of the .12-gauge sawed-off shotgun as similar to the gun used in the robbery and his specific identification of the pistol as the one taken by defendant. Moreover, even if we were to decide that the link between the weapons and shells and defendant was so tenuous that the weapons and shells should not have been admitted into evidence, any error was harmless. The positive testimony of Perkins together with the other evidence that was properly admitted was so overwhelming that the error could not have resulted in a denial of real justice or in a jury verdict that was the result of such error. See *People v. Wright* (1974), 56 Ill. 2d 523, 533, 309 N.E.2d 537, 542.

■ Defendant also contends that the prosecutor prejudicially altered the jury's view of the facts by commenting in his opening statement and closing argument on facts not in evidence. In regard to the opening statement, defendant argues that the prosecutor stated that Charles Jackson would testify that he saw Anthony Hickey and defendant pass between them what appeared to be a gun, and he also saw Anthony with $50 bills. Such testimony would have supported the State's theory that Anthony was defendant's accomplice. Jackson, however, did not testify at trial, nor was this evidence proved by any other means.

Clearly, it is improper for a prosecutor, at least with foreknow-

ledge, to include matters in the opening statement which are not thereafter proved. However, absent deliberate misconduct on the part of the prosecutor, the error is not grounds for reversal unless it resulted in substantial prejudice to defendant. (*People v. Sanders* (1980), 81 Ill. App. 3d 1001, 1004, 401 N.E.2d 1103, 1106; see *People v. Lampton* (1982), 108 Ill. App. 3d 41, 45, 438 N.E.2d 915, 917-18.) Here, defendant does not argue that the prosecutor acted with foreknowledge that Jackson would not testify, and in view of the other substantial evidence linking defendant with Anthony and the robbery, we conclude that the prosecutor's error was harmless.

■ Next, defendant argues that the prosecutor improperly told the jury in his opening statement that Tommy Hickey had directed Perkins to park his car in the alley where the robbery subsequently took place. Further, the prosecutor referred to this "fact" twice during closing argument. We agree with defendant that the prosecutor's remarks were improper since no testimony presented at trial supports the prosecutor's statements. Yet, while we cannot condone the prosecutor's conduct in this regard, we do not believe that reversible error occurred. The prosecutor did not dwell upon the comments, and when defendant objected to the comment made during the rebuttal argument, the objection was sustained. Since there would have been sufficient evidence to convict defendant absent any mention of Tommy's alleged statement, we do not believe that the prosecutor's comments warrant reversal.

The third argument raised by defendant in regard to improper comment is that the prosecutor misstated the evidence when he told the jury that proceeds from the robbery were found on Anthony Hickey and "in the place where Ricky Kelly frequents." Defendant did not object to the comment regarding Anthony, and, therefore, any error is waived. Even if defendant had objected, however, we believe that the statement was based on a legitimate inference from the evidence and was proper. As to that portion of the statement relating to defendant, the trial court sustained defendant's objection and instructed the jury to disregard the remark. We believe that the comment, itself, was obscure, and that the trial court's actions were sufficient to cure any prejudice. See *People v. Baptist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200, 1205-06.

■ Next, defendant argues that in referring to the letter allegedly sent by defendant to Perkins, the prosecutor deliberately attempted to prejudice defendant by arguing that defendant had threatened to "destroy" Perkins. We conclude that as the jury was aware of the contents of the letter, it was free to accept or reject the prosecu-

tor's interpretation, and, therefore, we reject defendant's claim of prejudice.

■ Finally, defendant argues that the prosecutor improperly argued to the jury that the trial court would not have permitted evidence about Perkins' identification of defendant if that identification were unreliable. In his closing argument, the prosecutor told the jury that the judge would not have allowed testimony regarding the identification if the identification had been based solely on clothes. While we agree with defendant that it was improper for the prosecutor to attempt to place a judicial stamp of approval on the identification, the error is not sufficient to warrant reversal. When viewed in context, the gist of the prosecutor's argument was that Perkins was not only able to recognize defendant's clothes, but more importantly, that he was able to recognize defendant's voice. *People v. Carter* (1979), 73 Ill. App. 3d 406, 392 N.E.2d 188, relied on by defendant, is distinguishable. In that case, the prosecutor repeatedly argued to the jury that the identifications should be accepted at face value because the court had ruled the identification procedure was proper. The argument made by the prosecutor in the present case did not similarly have the effect of removing the question of the validity of the identification from the jury.

■ In summary, while some of the prosecutor's comments would have been better left unsaid, they did not individually or collectively result in substantial prejudice to defendant. Prior to the opening statements, the court informed the jury that if counsel made statements that were not subsequently supported by the evidence, then those statements should be disregarded during deliberations. Prior to closing arguments, the court told the jury that closing arguments are not evidence. The jury instructions given to the jury reflected these admonishments. In addition, the evidence against defendant was overwhelming, and it included not only Perkins' identification but also defendant's statement and the letter defendant sent to Perkins in the hope that something could be worked out so that he would not have to return to the penitentiary. After reviewing the entire record, we conclude that defendant was not prejudiced by any of the errors he cites.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

WHITE, P.J., and McNAMARA, J., concur.