THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEEFUS FLAX, Defendant-Appellant.

First District (5th Division)   No. 1—90—0546

Opinion filed October 15, 1993.

Rita A. Fry, Public Defender, of Chicago (Kyle Wesendorf, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Donald Lyman, and John Magro, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Defendant, Keefus Flax, was convicted of murder and armed robbery after a jury trial in the circuit court of Cook County. The trial judge sentenced him to life imprisonment with no parole for the murder conviction and to 30 years' imprisonment for the armed robbery conviction.

The convictions arose from events at the Harrison Cleaners in Chicago on October 22, 1987. Angelo Katselis and his wife, Kiriaki Katselis, owned and operated the Harrison Cleaners. At trial Mrs. Katselis testified that on October 22, 1987, shortly after 6 p.m., the Katselises were behind the counter preparing to close the store. A man wearing a nylon stocking as a mask entered the store. His right hand was in his pocket. He demanded money from Mr. Katselis, who then gave the man the day's receipts, approximately $500, which he had previously placed in his pocket. With his left hand, the masked man signalled Mr. Katselis to open the cash register. Mr. Katselis took some money from the register and placed it on the counter. As he did so, he pointed at the masked man and said that he knew who the man was.

According to Mrs. Katselis' testimony, the man took the money, then pulled a gun from his right pocket and shot Mr. Katselis in the head. Mr. Katselis fell to the floor. Mrs. Katselis went to his side. The masked man came behind the counter, pushed Mrs. Katselis' head with the gun and ordered her to open the register. She gave the man the coins remaining in the register. The man then fled, discarding the stocking mask on the floor. Mr. Katselis died from the gunshot wound.

Mrs. Katselis gave police a physical description of the offender and told police that he wore a shiny black jacket. She had not seen the robber without his stocking mask. At trial she was unable to positively identify defendant as the offender.

Willis and Bertha Smith owned and operated the restaurant located across the street from the cleaners. Mr. Smith testified that shortly before 6 p.m. on that day, a man wearing a shiny blue jacket came into the restaurant, asked him what time it was, then proceeded to the video game area, where he spoke briefly with a man in a red jacket. The two men then left the restaurant. Mr. Smith testified that police later showed him several photographs from which he identified a photograph of defendant as the man in the blue jacket who had asked him for the time. Subsequently, Mr. Smith identified defendant in a lineup. He also made an in-court identification of defendant.

Mrs. Smith's testimony corroborated Mr. Smith's testimony regarding the conduct of the two men who came into the restaurant. She testified that when police showed her photographs she identified a picture of Kenneth Neal as the man in the red jacket. She also stated that she later identified Neal in a lineup. However, she was unable to identify defendant as the man in the dark jacket.

Minnie Allen was outside the restaurant at approximately 6:05 p.m. on the day of the robbery. She testified that a black man in a red jacket asked her for the time and then walked toward a black man in dark clothing. She stated that she heard one of the men say, "It's closing." Ms. Allen said she later viewed photographs for the police and identified a picture of Kenneth Neal as the man in the red jacket. She testified that she also identified Neal in a lineup.

Richard Brennan of the Chicago police department testified that he had shown the photographs to the Smiths and to Ms. Allen. Based on their identifications, defendant was brought to the police station. Officer Brennan testified that, after he advised defendant of his *Miranda* rights, defendant confessed to the robbery. Officer Brennan then called the felony review section of the State's Attorney's office. He testified that he then left, returned later with Kenneth Neal, and conducted a lineup which included defendant and Mr. Neal. Officer Brennan stated that upon viewing the lineup, Mr. Smith identified defendant. Mrs. Smith and Ms. Allen identified the accomplice, Kenneth Neal, but were unable to identify defendant.

Reginald Baker testified that he had been a State's Attorney in the felony review unit in October 1987. He stated that he was called to the police station to interview defendant on the evening of his arrest. Mr. Baker testified that, during the interview, defendant reiter-

ated his confession, which was recorded and transcribed by a court reporter, then signed by defendant. Mr. Baker read defendant's signed confession into the record.

According to defendant's signed confession, defendant admitted that he went to the Harrison Cleaners to commit a robbery. Kenneth Neal served as lookout, signalling defendant when there were no customers in the store. Defendant's statement corroborated most of Mrs. Katselis' testimony, except that defendant stated that the gun went off when Mr. Katselis reached for it. He had cocked the gun before entering.

Joanne Richmond, the medical examiner who had performed the autopsy, testified that there had been no evidence of gun powder residue called "stippling." She stated the absence of stippling meant the gun was fired at a distance of more than four feet.

A Chicago police department technician testified that he performed a comparison of the hairs taken from the stocking which was left at the scene with sample hairs taken from defendant. He found the characteristics to be consistent, indicating that the hairs in the stocking could have been defendant's hairs.

The defense offered the testimony of Timothy O'Shea of the Chicago police department. He testified that a few days after the shooting Mrs. Katselis indicated the man who shot her husband might be the son of a customer named "Well," who she thought might work at the airport. A search of the cleaners' records was unproductive. Police inquiries at the airport led to the discovery that a man named Tyree Well worked there. However, when it was discovered that Mr. Well's address was on the south side, rather than in the neighborhood of the cleaners, no further investigation was conducted.

The jury found defendant guilty of first degree murder and armed robbery. The judge advised defendant of his right to a jury at the sentencing stage because of the possibility of a death sentence. Defendant waived his right to a jury. The court sentenced defendant to natural life in prison without parole for the murder and to 30 years' imprisonment for the armed robbery.

Defendant raises two issues on appeal: (1) whether he was denied a fair trial because of improper remarks made by the State's Attorney in opening statement and in closing argument; and (2) whether the sentence imposed for the murder conviction was excessive.

Defendant contends he was denied a fair trial by the following remarks made by the prosecutor in the opening statement:

> "The evidence will show that on October of 1987, a Greek immigrant named Angelo Katselis and his wife were in business

together. They owned a small dry cleaning store on the west side of this city on Harrison Street near Central Avenue called the Harrison Dry Cleaners.

The evidence will also show that in October of 1987, the defendant, Keefus Flax, together with a man named Kenneth Neal, was also in business. He with Neal was in the business of murder and armed robbery, and on October 22, 1987, this business man murdered Angelo Katselis."

Defendant also cites as improper the following remarks made by the State's Attorney in his rebuttal closing argument:

"This bad man conspired with Kenneth Neal on October 22, 1987 and because of that conspiracy and in particular because of what the defendant did during that conspiracy this good man has fallen and has died. If there is any fortunate aspect of this case it is immediately after Angelo Katselis fell and died good men and woman beginning with Officer Alvarez, Mrs. Katselis, and ending with the State's Attorney Baker joined together in their association, their association which affords Mr. Sheehan and I an opportunity to stand before you and present to you our evidence, the evidence which has proven the guilt of first degree murder and armed robbery. It is now time for you good men and women to join together in your association, an association based upon the evidence which should end by your focusing complete and full responsibility upon the bearer, that bearer brought to bear the responsibility, Keefus Flax."

We note, first of all, that defendant has waived any error based on these statements. Where a timely objection is made at trial, the trial judge can usually correct the error by sustaining the objection and instructing the jury to disregard the improper remark. Failure to object at trial waives those errors which could have been corrected in such a manner. (*People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233.) In *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274, our supreme court held, "*Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis in original.) *People v. Enoch*, 122 Ill. 2d at 186.

The record indicates that no objections were made to any of these remarks during trial. After the jury retired, defendant's counsel made an oral motion for mistrial which the court denied. In support of the motion defense counsel stated that in the prosecutor's closing argument, "[t]he defendant was called a bad man" and "after the bad man

argument Mr. Katselis was called a good man." However, the motion for mistrial was presented after the point at which the trial judge could have instructed the jurors to disregard the specific remarks. Furthermore, defendant's subsequent written post-trial motion for a new trial, while indicating that prejudicial, inflammatory remarks were made in closing argument, does not detail those remarks. "A reference in a post-trial motion to 'prejudicial' or 'erroneous' statements in closing argument, without factual detail, is not enough to preserve the issue for review." *People v. Phillips* (1989), 186 Ill. App. 3d 668, 682, 542 N.E.2d 814.

Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)) provides an exception to the waiver doctrine. Rule 615(a) allows a reviewing court to consider plain errors or defects which affect substantial rights even though the errors were not brought to the trial court's attention. (134 Ill. 2d R. 615(a).) This plain error rule applies where the evidence in a case is closely balanced or where an error is of such magnitude that the defendant has been denied a fair and impartial trial. *People v. Carlson*, 79 Ill. 2d at 576-77.

■ The plain error rule is inapplicable in this case. The evidence in the case is not closely balanced. Defendant's signed confession admits his commission of the armed robbery and the fact that Mr. Katselis was killed during the commission of that felony. Except for the fact that Mrs. Katselis could not identify defendant as the offender, Mrs. Katselis' testimony substantially coincided with defendant's signed confession. The hairs found in the stocking had characteristics consistent with defendant's hair. Mr. Smith's testimony placed defendant and his accomplice in the restaurant across the street immediately before the robbery. According to his testimony, defendant inquired as to the time and then left the restaurant with his accomplice immediately prior to the time the crime was committed. All of this evidence was unimpeached. Based upon the overwhelming strength of the evidence of defendant's guilt, we cannot conclude that the error was of such a magnitude that defendant was denied a fair trial.

Even if we were to assume that the matter had not been waived, the State's Attorney's remarks do not constitute reversible error. The purpose of a prosecutor's opening argument is to inform the jury about what the prosecution intends in good faith to prove through the evidence to be presented. It is improper to mention matters which the prosecution knows will not be proved during the trial. (*People v. Roberts* (1981), 100 Ill. App. 3d 469, 476, 426 N.E.2d 1104.) However, an improper remark during an opening statement will not be grounds for reversal unless it resulted in substantial prejudice to the defend-

ant. See *People v. Alvarez* (1989), 186 Ill. App. 3d 541, 552-53, 542 N.E.2d 737.

We note at the outset that all of the remarks at issue here were part of either the opening statement or closing arguments, and, as such, they were subject to a jury instruction that opening statements and closing arguments are not evidence and that the jury should disregard anything in those statements which is not supported by the evidence. Although such an instruction alone is not, under all circumstances, fully curative, it is clearly a factor to be considered. See *People v. Kelly* (1985), 134 Ill. App. 3d 732, 743, 480 N.E.2d 1343.

The determination as to the propriety of a prosecutor's remarks during opening statement or closing argument is within the trial judge's discretion, and every reasonable presumption must be applied that the trial judge properly exercised such discretion. (*People v. Gutirrez* (1990), 205 Ill. App. 3d 231, 262, 564 N.E.2d 850.) The test for determining whether there was reversible error because a remark resulted in substantial prejudice to the defendant is whether the remark was a material factor in the conviction, or whether the jury might have reached a different verdict had the prosecutor not made the remark. (*People v. Cosme* (1993), 247 Ill. App. 3d 420, 433, 617 N.E.2d 364, 373; *People v. Manley* (1991), 222 Ill. App. 3d 896, 908, 584 N.E.2d 477; *People v. White* (1989), 192 Ill. App. 3d 55, 62, 548 N.E.2d 421.) The improper remark must be considered in light of all the evidence. *People v. Cosme*, 247 Ill. App. 3d at 433, 617 N.E.2d at 373.

The State contends that the prosecutor's opening statement was not improper because it merely referred to the professional, businesslike manner in which the crime was committed and such a conclusion was supported by the evidence. While this interpretation is arguably plausible, the remark should nevertheless have been avoided because it could also connote that defendant had been involved in other criminal activities. However, as previously discussed, the evidence against defendant was very strong. Therefore, this remark, although improper, was harmless.

Defendant relies on *People v. McCray* (1978), 60 Ill. App. 3d 487, 377 N.E.2d 46. In that case, the prosecutor asked the defendant if he had any occupation other than robbing people. (*People v. McCray*, 60 Ill. App. 3d at 489.) The reviewing court found that the prosecutor's characterization of the defendant as a professional robber "prevented the jury from dispassionately evaluating the defendant's testimony." (*People v. McCray*, 60 Ill. App. 3d at 490.) The court found the remark to be reversible error. *People v. McCray*, 60 Ill. App. 3d at 490.

However, *People v. McCray* is distinguishable from the present case. In *People v. McCray*, the defendant did not confess his guilt as defendant did in this case. Moreover, the defendant in *People v. McCray* testified at trial, his testimony being significantly different from the testimony of the robbery victim and two police officers. (See *People v. McCray*, 60 Ill. App. 3d at 488-89.) The court based its holding that the prosecutor's question was reversible error on the fact that defendant's testimony conflicted with that of the other three witnesses and, therefore, the verdict depended on the jurors' assessment of defendant's credibility, which had been jeopardized by the prosecutor's question. (*People v. McCray*, 60 Ill. App. 3d at 490.) Defendant's claim that the outcome of the present case depended on the jury's assessment of Mrs. Katselis' credibility versus defendant's credibility has no basis in the evidence. Defendant did not testify at trial. The only real conflict between his signed statement and Mrs. Katselis' testimony concerns whether defendant shot the victim intentionally or the cocked gun fired when the victim reached for it. The verdict did not depend on resolution of that conflicting evidence. The fact that Mr. Katselis was killed during the commission of an armed robbery is sufficient to establish first degree murder. Intent was not a factor in the verdict. Although we do not condone the prosecutor's improper remark, it did not rise to the level of prejudice required for reversible error. See *People v. Manley*, 222 Ill. App. 3d at 908.

With respect to the prosecutor's remarks in closing argument, defendant first states that, through such remarks, the State's Attorney sought to align himself with the jurors in the same "association." Defendant correctly cites *People v. Vasquez* (1972), 8 Ill. App. 3d 679, 291 N.E.2d 5, for the proposition that it is improper for a prosecutor to align himself with the jury. (*People v. Vasquez*, 8 Ill. App. 3d at 681 (prosecutor referred to himself as thirteenth juror).) As previously noted, this point is waived since it was not raised at trial or in any post-trial motion. However, even assuming that the error had not been waived, and assuming that defendant's characterization of the State's Attorney's remarks is correct, such error is harmless because, when considered in light of the overwhelming evidence of defendant's guilt, the remark did not result in substantial prejudice to defendant.

Defendant also contends that the prosecutor's closing argument references to the defendant as a "bad man" and to the victim, his wife, and some witnesses as "good" people were improper. Statements arousing sympathy for, or commending, the victim or the victim's family, while generally improper, can constitute harmless error where defendant is not substantially prejudiced. (See, *e.g., People v.*

*Lucas* (1989), 132 Ill. 2d 399, 436, 548 N.E.2d 1003 (statement in closing argument at sentencing hearing that victim would never play at the fishing hole where his body was found and that his mother was left with nothing); *People v. Spreitzer* (1988), 123 Ill. 2d 1, 37, 525 N.E.2d 30, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274 (reference to fact that defendant deprived victim and victim's family of normal life); *People v. Requena* (1982), 105 Ill. App. 3d 831, 837, 435 N.E.2d 125, *cert. denied* (1983), 459 U.S. 1204, 75 L. Ed. 2d 436, 103 S. Ct. 1191 (commendation of victim for reporting rape).) Furthermore, although it may be improper to characterize a defendant in a derogatory manner where such characterization is intended to inflame the passions of the jury or arouse the jury's prejudice against the defendant (*People v. Manley*, 222 Ill. App. 3d at 911), the prosecutor's characterization of defendant as a "bad man" is a relatively mild pejorative in light of the seriousness of the crimes committed. See, *e.g., People v. Spreitzer*, 123 Ill. 2d at 39 (statement that to call defendant an animal "would be an insult to the animals" was harmless error).

In view of the overwhelming evidence of defendant's guilt, there is no basis for concluding that the jury might have reached a verdict of not guilty had the State's Attorney not made the improper remarks. Consequently, even if such errors had not been waived, the prosecutor's comments do not rise to the level of prejudicial error required for reversal. See *People v. Manley*, 222 Ill. App. 3d at 908.

■ Lastly, defendant contends that the trial court abused its discretion when it imposed a sentence of natural life imprisonment without parole for the murder conviction. Section 5—8—1 of the Unified Code of Corrections permits a sentence of natural life imprisonment for first degree murder if an aggravating factor listed in section 9—1 of the Criminal Code of 1961 exists. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(1)(b).) Defendant concedes the existence of an aggravating factor in this case. However, defendant contends that, because of defendant's age, a minimal criminal history, and his showing of remorse, imposition of the natural life imprisonment sentence was an abuse of discretion.

A reviewing court is required to give the trial judge's sentencing determination great deference and weight. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492, 431 N.E.2d 344; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) A sentence will not be altered on appeal unless the trial court abused its discretion in imposing the sentence. (*People v. Perruquet*, 68 Ill. 2d at 154.) This standard is predicated on the rationale that the trial judge is in the best

position to determine a proper sentence. (*People v. Perruquet*, 68 Ill. 2d at 154.) The trial judge has the "often difficult and delicate responsibility of fashioning a sentence which will not only protect the interests of society, but will also allow for the possibility of rehabilitation of the offender." (*People v. Perruquet*, 68 Ill. 2d at 155.) To that end, the determination requires consideration of many factors, such as defendant's demeanor and credibility, moral character, social environment, age, mentality, habits and criminal history, as well as the circumstances and seriousness of the crime. (*People v. Perruquet*, 68 Ill. 2d at 154; *People v. Cosme*, 247 Ill. App. 3d at 437-38, 617 N.E.2d at 376.) "While our State Constitution requires the court to consider the defendant's rehabilitation potential in sentencing him, it does not require the judge to give greater weight to that consideration than to the seriousness of the offense." *People v. Mack* (1985), 133 Ill. App. 3d 788, 793, 479 N.E.2d 445; see also *People v. Gutirrez*, 205 Ill. App. 3d at 268 (rehabilitation does not outweigh other considerations persuasive of a severe sentence).

The record shows that the trial judge considered the relevant factors in the present case. The judge considered that defendant was only 22 years old at the time of sentencing. He acknowledged defendant's writing talent and his progress in that area while in prison. He commented on the intelligence and sincerity reflected in defendant's remarks to the court. The judge also noted, however, defendant's criminal record which includes a 1982 misdemeanor theft conviction and 1981 delinquency conviction for theft, each of which resulted in one year's probation, and a 1984 burglary conviction resulting in a three-year prison sentence.

The judge stressed that defendant needlessly shot Mr. Katselis after he had already obtained the money and then, wanting still more money, coldheartedly put a gun to Mrs. Katselis' head as she attempted to care for her injured husband, making her give him the last change from the register. He also stressed that defendant had planned the details of the robbery and had entered the store with his gun cocked, knowing that by doing so great bodily harm or death was foreseeable.

Defendant's counsel suggested during oral argument that a sentence of 40 or 50 years would have been appropriate. Given defendant's age and minimal criminal history, even under the brutal circumstances of this crime, we might not have been inclined to totally eliminate consideration of possible parole after service of a lengthy prison term. However, where, as here, the record shows no abuse of discretion, we cannot justify substituting our own judgment for that

of the trial judge merely because we might have balanced the relevant sentencing factors differently had the sentencing task been ours. *People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541.

For the foregoing reasons, we conclude that there was no reversible error in the conduct of defendant's trial and no abuse of judicial discretion. Defendant's conviction and sentence are affirmed.

Affirmed.

McNULTY and MURRAY, JJ., concur.