THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. WILLIAM KAUTZ *et al.*, Defendants-Appellees.

Second District    No. 2—94—0735

Opinion filed June 14, 1995.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Angelo Del Marto, of Storino, Ramello & Durkin, of Rosemont, for appellees.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

On November 8, 1993, Lake County police stopped defendant William Kautz in the vicinity of Illinois Routes 83 and 60 in Lake County. On November 23, 1993, Lake County police stopped defendant Kim Bishop in the vicinity of Illinois Route 83 and Winchester Road in Lake County. The police stopped and weighed defendants' garbage trucks on portable police scale No. 255 pursuant to the Illinois Vehicle Code, which provides:

"Any police officer having reason to believe that the weight of a vehicle and load is unlawful shall require the driver to stop and

submit to a weighing of the same either by means of a portable or stationary scales. If such scales are not available at the place where such vehicle is stopped, the police officer shall require that such vehicle be driven to the nearest available scale that has been tested and approved by the Illinois Department of Agriculture." 625 ILCS 5/15—112(a) (West 1992).

Scale No. 255 indicated that the defendants' trucks were overweight. The weight was recorded on a weight ticket. Accordingly, the police issued the defendants tickets and complaints which stated that their second and third axles were overweight and that they lacked proper registration. The weight tickets state that Kautz's second and third axles weighed 45,200 pounds (5,200 pounds overweight) and that Bishop's second and third axles weighed 47,100 pounds (7,100 pounds overweight). If found guilty, Kautz and Bishop would be subject to fines of $985 plus costs, and $1,550 plus costs, respectively.

In Illinois, a weight ticket taken from a certified scale is sufficient to make a *prima facie* case against a defendant. (*People v. Freehill* (1970), 129 Ill. App. 2d 234, 238.) Accordingly, at the bench trial the State attempted to admit into evidence the weight tickets taken from scale No. 255 indicating that the defendants' trucks were overweight. However, defendants filed a motion to suppress the weight tickets, arguing that the scale was improperly tested. The trial court granted defendants' motion to suppress the weight tickets. The State appeals the trial court decision to suppress the weight ticket evidence and seeks remand. We affirm.

Before granting defendants' motion, the trial court heard the following evidence. The Illinois Department of Agriculture placed portable police scale No. 255 (scale No. 255) in service on June 17, 1993, after inspection and testing. Scale No. 255 is an accuracy class IIII, portable, pitless, digital automatic indicating, automatic zero setting, vehicle scale and is divided into three sections. Each section can weigh up to 40,000 pounds. On October 19, 1993, Delbert Ford, an inspector for the Illinois Department of Agriculture, Bureau of Products Inspection and Standards (Bureau), performed the "increasing load test" and reinspected scale No. 255 inside the Department of Transportation facility at the State fairgrounds in Springfield, Illinois. After testing and inspection, Ford affixed decalcomania numbers 36263, 36264, and 36265 on each of the three scale sections. The Department of Agriculture then sent the scale to Lake County, Illinois, where the scale was eventually used to weigh defendants' garbage trucks in November 1993. Scale No. 255 was tested again in Springfield on January 5, 1994.

At the hearing to suppress, defendants argued that the Weights and Measures Act (225 ILCS 470/1 *et seq.* (West 1992)) and Rules and Regulations of the Illinois Department of Agriculture § 600.300 (1993) require police scales to be tested for conformance with the United States Department of Commerce Technology Administration National Institute of Standards and Technology Handbook 44 (Handbook 44). Handbook 44 delineates specifications, tolerances, and other technical requirements for weighing and measuring devices. The Weights and Measures Act provides in relevant part:

"(12) 'Certificate of Conformance' means a document issued by the National Bureau of Standards based on testing in participating laboratories which indicates that the weights and measures or weighing and measuring device conform with the requirements of National Bureau of Standards' Handbooks 44, 105-1, 105-2, or 105-3, and any subsequent revisions or supplements thereto." 225 ILCS 470/2(12) (West 1992).

Section 600.300 of the Rules and Regulations of the Illinois Department of Agriculture (1993) provides in relevant part:

"(a) All vehicle scales shall comply with the requirement of the National Bureau of Standard's Handbook 44, which is adopted in Section 8 of the Weights and Measures Act [Ill. Rev. Stat. 1987, ch. 147, par. 108] and shall, in addition, meet either 1, 2 or 3.

\* \* \*

(3) Portable Pitless Vehicle Scales

A. Temporary Use of Scale—the scale may be used at the same facility for a period of not more than twelve months from the date of the initial state certification.

B. Limited Use of Scale—the scale shall be used only for the weighing of soil, gravel, sand, cement and other building material.

C. State Test Required—a state scale test \* \* \* is required prior to the use of the scale. This procedure is to be repeated each time the scale is moved." 12 Ill. Adm. Reg. 8306, § 600.300 (1993).

The trial court heard testimony that although scale No. 255 was not tested in accordance with Handbook 44, it was certified on October 19, 1993, by Inspector Ford. Before certification, Ford performed only one test—the increasing load test. This test consists of placing a total of 21,000 pounds on each of the three scale sections in 3,000-pound increments. However, numerous Handbook 44 tests were not performed, for example: the maximum load test (which indicates whether the maximum load on an automatic zero-setting mechanism scale (scale No. 255) could be rezeroed within 3.0 scale divisions (300 pounds) when placed on or removed from the platform); level indicating means test (which indicates whether a portable axle-

load scale is "accurate when placed out of level up to and including 5 percent"); the zero load test (which determines whether the scale can display an out-of-balance condition on both sides of zero); the time repeatability test (which indicates whether a scale will register the same reading when identical weights are repeatedly placed on it); the face capacity or used capacity test; the decreasing load test; the discrimination test; the zone of uncertainty test; and the time dependence test. Tests for influence factors such as temperature, barometric pressure, and radio frequency or electromagnetic interference were not performed. Further, according to Handbook 44, the maximum value of a scale division is 20 pounds for unmarked vehicle scales used in combination (scale No. 255), with a capacity of less than or equal to 200,000 pounds. However, the test report issued by Inspector Ford indicated that scale No. 255 had a 100-pound scale division.

Ford failed to appear at the hearing. However, Ford's supervisor, Mr. Colbrook, manager of the Bureau, appeared at the hearing as a witness for the State. Mr. Colbrook worked for the Bureau 21 years as a field inspector and as the Bureau manager. Mr. Colbrook chaired the 69th Conference of the Committee on Specifications and Tolerances which wrote the 1985 edition of Handbook 44. The parties stipulated that Mr. Colbrook was an expert on weight and measurement.

Mr. Colbrook testified that the 1993 and 1994 editions of Handbook 44 were essentially the same as the 1985 edition to which he contributed. He stated that the tests in Handbook 44 are type evaluation tests and such tests are only performed on prototype scales. He stated that after a prototype scale is tested it receives a certificate of conformance. Individual scales manufactured from the prototype are only given field tests. Therefore, according to Mr. Colbrook, individual scales need not be tested in accordance with Handbook 44. He further testified that many of the tests listed in Handbook 44 were unnecessary and inappropriate for scale No. 255. In particular, he stated that Handbook 44 did not require scale No. 255 to be tested to its dial case capacity or 1,000-scale divisions or to its used capacity. Mr. Colbrook also testified that the discrimination test was not routinely performed because it would require the inspector to block the wind which could cause dramatic changes in weight readings. However, a discrimination test was, in fact, performed when the scale was retested in Springfield, Illinois, on January 5, 1994. Mr. Colbrook testified that scale No. 255's configuration made the shift test (also known as the section test) impossible to perform. Mr. Colbrook acknowledged that temperature, barometric pressure, and radio frequency interference or electromagnetic interference could affect a scale's accuracy or performance.

Uncontroverted evidence revealed that scale No. 255 was moved to Lake County after it received certification on October 19, 1993, in Springfield, Illinois. Scale No. 255 was not retested before the police used it to weigh defendants' trucks. Mr. Colbrook acknowledged that no one tested the relevant Lake County locations for the presence of radio frequency interference or electromagnetic interference from traffic signals, overhead lighting, overhead tension wires, underground cables, neon lights, or police and commercial radio frequency bands. However, he stated that temperature range, barometric pressure influence, and radio frequency interference tests are type evaluation tests, not field tests, and, thus, were not necessary.

Mr. Colbrook stated that the Director of the Illinois Department of Agriculture authorized the publication of the State's Inspector Procedures Manual for the Bureau. Mr. Colbrook testified that the most important test in the Inspector Procedures Manual is the increasing load test. He stated that this test alone was sufficient to determine the accuracy of scale No. 255. He explained that the increasing load test simulates the way in which the scale is actually used. To perform the test a truck rolls onto the scale platform which increases the weight indicated on the scale. He stated that the October 19, 1993, weight report indicated that scale No. 255 passed the increasing load test.

After hearing all the testimony and arguments, the trial court found that the State failed to establish the accuracy of scale No. 255 and thus granted defendants' motion to suppress the weight tickets. On appeal, the State argues that police scales are not required to be certified as accurate. They argue in the alternative that even if certification of accuracy was required, a police scale does not have to pass all of Handbook 44's requirements to be certified as accurate. The defendants argue that scale No. 255 was inaccurate, it was not certified in accordance with statutory requirements, it should have been retested after it was moved to Lake County, it was not tested in conformance with Handbook 44, and that several necessary tests were not performed.

■■■ We may not disturb a trial court's decision to suppress evidence unless the trial court's decision was clearly erroneous or against the manifest weight of the evidence. (*People v. Lukach* (1994), 263 Ill. App. 3d 318, 323.) Generally, a document which is offered for the truth of the matter asserted is considered hearsay, and, thus, it is inadmissible. (*People v. Graney* (1992), 234 Ill. App. 3d 497, 506.) However, if the document is a public record "maintained by public officials or employees in connection with the performance of their duties," it may be admitted as an exception to the hearsay rule.

(*Barker v. Eagle Food Centers, Inc.* (1994), 261 Ill. App. 3d 1068, 1074.) As with all evidence, the proponent of a public record must lay an adequate foundation. (*Graney*, 234 Ill. App. 3d at 506.) To lay an adequate foundation, the proponent must establish that the public document is reliable and accurate. (*Graney*, 234 Ill. App. 3d at 506.) If the proponent fails to establish that the evidence is reliable and accurate, the trial court may refuse to admit it. (*People v. Smith* (1990), 141 Ill. 2d 40, 73-76; *Graney*, 234 Ill. App. 3d at 506.) " 'If the source of information or the method or circumstances of preparation [of the public record] indicate lack of trustworthiness, the court may bar admissibility.' " *Graney*, 234 Ill. App. 3d at 506, quoting M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.12, at 663 (5th ed. 1990).

■ In this case, the trial court decided to grant defendants' motion to suppress the weight tickets because the trial court did not believe the State established an adequate foundation. The trial court did not believe scale No. 255 should have received a certificate of accuracy. The State argues that police scales were not required to be certified as accurate and that, even if certification of accuracy was required, a police scale did not have to pass all of the requirements in Handbook 44 to obtain certification. The State cites the amended Illinois Vehicle Code and the March 7, 1994, emergency amendment to the former 12 Ill. Adm. Reg. 8306, § 600.30 (1993) to establish legislative intent. The amended Code provides in relevant part: "Law enforcement is exempt from the requirement of commercial weighing established in NIST handbook 44." (625 ILCS 5/15—112(a) (West 1994) (eff. January 1, 1994).) The amended regulation states in relevant part: "Except for scales used for the enforcement of highway weight laws, all vehicle scales shall comply with the requirements of *** Handbook 44 ***." 18 Ill. Adm. Reg. 4430-31, § 600.300 (March 7, 1994, emergency amendment).

We do not find the State's arguments persuasive. Assuming, *arguendo*, that both of the State's assertions are correct, the State fails to explain why it does not need to lay a proper foundation before the weight ticket can be admitted. The State merely established that one test was performed: the increasing weight test. However, the State's own expert testified that many factors can affect the accuracy of portable scales. It is uncontroverted that these other tests were not performed. Further, the State failed to establish that the scale was retested after it was moved to Lake County, that the ground at the Lake County test sites was level, or that the scale was tested for temperature variation, barometric pressure variation, or radio frequency interference. There was evidence that these factors can affect the ac-

curacy of scales. Therefore, there was ample evidence to support defendants' contention that the weight tickets taken from scale No. 255 were not trustworthy. Even if the Illinois Vehicle Code and the Department of Agriculture do not have standards for police scale testing, the rules of admissibility of evidence do. Accordingly, the decision of the circuit court of Lake County was not clearly erroneous, and we will not disturb its decision to grant defendants' motion to suppress the weight tickets.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS and RATHJE, JJ., concur.