THE CITY OF CHAMPAIGN, Plaintiff-Appellee, v. BRIAN KEITH SIDES, Defendant-Appellant.

Fourth District    No. 4—02—0574

Opinion filed May 19, 2004.—Rehearing denied June 17, 2004.

Cristina M. Manuel (argued), of Manuel & Sides Law Office, of Urbana, for appellant.

Frederick C. Stavins, City Attorney, of Champaign (Rhonda R. Olds (argued), Assistant City Attorney, of counsel), for appellee.

JUSTICE MYERSCOUGH delivered the opinion of the court:

Defendant, Brian Keith Sides, was charged with public indecency in violation of the Municipal Code of Champaign (Municipal Code) (Champaign Municipal Code § 23—111(1) (1985)). A jury convicted defendant, and the trial court fined him $500. Defendant appeals, arguing (1) his prosecution violated the United States and Illinois Constitutions; (2) the trial court erred in denying defendant's pretrial motions; (3) the trial court improperly admitted and excluded evidence, exhibits, and testimony; (4) the prosecution engaged in misconduct; and (5) defendant was prejudiced by bias and errors on the part of the trial court. We affirm.

## I. BACKGROUND

On August 17, 2001, plaintiff, the City of Champaign (Champaign), charged defendant with public indecency in that defendant:

"did, while thirty-one (31) years of age, engage in an act of sexual intercourse, in an area commonly open to the public, namely behind a building by a loading dock, at 802 Town Center, Champaign, Illinois."

The complaint contained a prayer that, upon conviction, defendant be fined not less than $175 and not more than $750 pursuant to section 1—21 of the Municipal Code (Champaign Municipal Code § 1—21 (1985)). Section 23—111 of the Municipal Code states:

"No person shall commit a public indecency. Any person of the age of seventeen (17) years and upwards who performs any of the following acts in a public place commits a public indecency:

(1) An act of sexual intercourse ***." Champaign Municipal Code § 23—111 (1985).

Defendant appeared *pro se* throughout the trial court proceedings. Defendant filed a motion for discovery seeking, *inter alia*, "any handwritten notes by all police personnel made in connection with" defendant's case. Defendant also filed a motion to dismiss, alleging the minimum fine demanded by the complaint violated article I, section 16, of the Constitution of the State of Illinois (Ill. Const. 1970, art. I, § 16) and article I, sections 9, clause 3, and 10, clause 1, of the United

States Constitution (U.S. Const., art. I, §§ 9, 10) prohibiting the passage of an *ex post facto* law.

Following a hearing, the trial court dismissed part of the complaint, without prejudice, allowing the city to amend the wording regarding the minimum fine. The court denied the rest of the motion and ordered the city to produce any handwritten notes of police officers.

Champaign filed an amended complaint containing a prayer that defendant be fined not less than $1 nor more than $750. Champaign then filed a new motion for leave to amend its complaint, stating that after filing the amended complaint, it learned the location alleged in the complaint was inaccurate. The second-amended complaint stated defendant "did, while thirty-one (31) years of age, engage in an act of sexual intercourse *in a public place*, namely, behind a building by a loading dock at *2102 N. Prospect Avenue*[,] Champaign, Illinois." (Emphases added.) In addition to correcting the address of the offense to 2102 N. Prospect Avenue, the language "in a public place" in the second-amended complaint differed from the first-amended complaint, which read "in an area commonly open to the public."

Defendant then filed a motion *in limine* to preclude use of a videocassette tape (videotape), alleging the videotape conveyed images that did not include any elements of the charge, were unwelcome, and were substantially more prejudicial than probative of any issue at trial.

The trial court later heard argument on defendant's motion to compel production of handwritten notes and motion *in limine*. The court denied the motion to compel. It also denied the motion *in limine*, stating: "I believe that the probative value is certainly not outweighed by the prejudicial impact that this videotape may have."

Defendant filed a second motion to dismiss, alleging he first learned of Champaign's use of the term "public place" in its second-amended complaint after he received proposed jury instructions at a pretrial conference. Defendant also objected to the use of the term "public place" in the jury instructions. The trial court heard argument on defendant's second motion to dismiss. The court expressed concern over the second-amended complaint "due to the fact that [the court] had specifically inquired *** [if] the only change between the amended complaint and the second-amended complaint was the change of address." However, the court denied the motion, holding defendant had not been prejudiced by the change because the complaint followed the Municipal Code, which contains a definition of "public place." The court also denied defendant's motion to limit the testimony of Troi Westbrook, a videotape foundation witness. The court concluded that

to lay the foundation, Champaign must establish the videotape had not been altered.

Troi Westbrook testified for Champaign. Troi is employed by the Target store at 2102 North Prospect in Champaign and works with its surveillance equipment. On the afternoon of July 10, 2001, Westbrook's supervisor was manually operating the camera covering the outside area. Westbrook testified that what he saw on the screen was a man in the passenger seat of a car with his pants down. The car was parked behind the Target building. Westbrook identified defendant as the man in the car. When police arrived, they viewed the tape. Westbrook's supervisor turned the tape over to police.

Westbrook testified he could see "a man's rear end in the windshield, and he was moving." At this point, Westbrook could not see anyone else in the vehicle. The videotape was admitted into evidence and viewed by the jury. Defendant argued the jury should be allowed to view the tape in its entirety, but the court held any footage after the vehicle left the rear of Target was irrelevant.

Officer Randall Cunningham with the Champaign police department testified the vehicle in question had left Target by the time he arrived. Target security advised him the vehicle was pulling into the Borders' store parking lot. When Officer Cunningham pulled into the parking lot, he saw two people in the car and identified defendant as the driver. Officer Cunningham viewed the videotape and issued defendant a citation for public indecency.

Defendant testified his car was stopped in a parking lot adjacent to Target. Anson Huckleby, security supervisor at Target, "came running and screaming across the parking lot that [defendant] was having unconsensual sex with the minor." Defendant testified he was the only person cited for this incident, but the trial court sustained Champaign's objection to this evidence.

The jury found defendant guilty of public indecency and assessed a $500 fine. This appeal followed.

## II. ANALYSIS

### A. Violation of Constitutional Rights

#### 1. *Preemption*

■ Defendant first argues section 23—111 of the Municipal Code is preempted by section 11—9 of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/11—9 (West 2000)) because the two provisions are inconsistent, and "[w]here there is a conflict between a statute and a municipal ordinance, the ordinance must give way." Section 11—9(a) of the Criminal Code states:

"(a) Any person of the age of 17 years and upwards who performs any of the following acts in a public place commits a public indecency:

(1) An act of sexual penetration or sexual conduct as defined in [s]ection 12—12 of this [c]ode[.]" 720 ILCS 5/11—9(a) (West 2000).

Determination of preemption of a local ordinance by a state statute involves construction of the statute and is subject to *de novo* review. *City of Chicago v. Haworth*, 303 Ill. App. 3d 451, 454, 708 N.E.2d 425, 428 (1999).

Article VII, section 6(i), of the Illinois Constitution states as follows: "(i) Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i). Under this provision, home rule units have the broadest powers possible. *City of Chicago v. Roman*, 184 Ill. 2d 504, 512, 705 N.E.2d 81, 87 (1998). The power of a home rule unit can only be restrained by a specific act of the legislature. *Haworth*, 303 Ill. App. 3d at 455, 708 N.E.2d at 428. Defendant argues ordinances may in no event conflict with a state statute. However, a limitation on a home rule unit's power, even only to the extent the local ordinance is inconsistent with the state statute, must be specifically stated by the legislature. *Roman*, 184 Ill. 2d at 520, 705 N.E.2d at 90. "[T]he General Assembly knows how to accomplish this, and has done so countless times, expressly stating that, pursuant to article VII, section 6(i), of the Illinois Constitution, a statute constitutes a limitation on the power of home rule units to enact ordinances that are *contrary to or inconsistent with* the statute." (Emphasis added.) *Roman*, 184 Ill. 2d at 520, 705 N.E.2d at 90. Defendant has pointed to no express limitation on home rule units to regulate in this area. We find section 23—111 is a valid exercise of home rule unit power.

## 2. *Ex Post Facto Law*

■ Defendant next argues the trial court erred by not dismissing Champaign's complaint for violating the prohibition against *ex post facto* laws (Ill. Const. 1970, art. I, § 16; U.S. Const., art. I, §§ 9, 10). " '[A]ny statute *** which makes more burdensome the punishment for a crime, after its commission, *** is prohibited as *ex post facto*.' " *Dobbert v. Florida*, 432 U.S. 282, 292, 53 L. Ed. 2d 344, 356, 97 S. Ct. 2290, 2298 (1977), quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70, 70 L. Ed. 216, 217, 46 S. Ct. 68, 68 (1925). Defendant argues the minimum fine sought by Champaign in its initial complaint is "more burden-

some" than the minimum fine permitted by the Municipal Code in effect at the time of his alleged offense. Defendant argues the table of minimum fines had expired; hence, there was no minimum fine (a minimum fine of zero dollars), because to apply the default provision would violate the intent of the Municipal Code's drafters.

Defendant was not punished under a penalty scheme enacted after the date of his offense because defendant was not fined pursuant to any version of the table of minimum fines. Champaign's amended complaint stated it sought the minimum and maximum fines "pursuant to [c]hapter 1, [s]ection 1—21[,] of [the Municipal] Code." Defendant alleges Champaign's mispleading denied him the opportunity to pay the minimum fine because Champaign knowingly demanded an incorrect and higher minimum fine than was lawful. Defendant forfeited this argument by failing to raise it before the trial court. *People v. Pinkonsly*, 207 Ill. 2d 555, 563, 802 N.E.2d 236, 242 (2003). Therefore, we hold the trial court did not err in dismissing Champaign's initial complaint without prejudice.

### 3. *Equal Protection*

■ Next, defendant argues his right to the equal protection of the laws under the Constitution of the State of Illinois (Ill. Const. 1970, art. I, § 2) and United States Constitution (U.S. Const., amend. XIV) was violated. Defendant argues that engaging in an act of sexual intercourse requires two people, and two people were present when he allegedly committed his offense, but only defendant was charged with public indecency. Defendant argues the Champaign police department dealt dissimilarly with similarly situated people. Defendant asserts this alleged discrimination was based on gender, because gender is "the only legal difference between the two suspects."

> "[P]rinciples of equal protection are violated when the selective enforcement of a statute is 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' [Citation.] However, so long as a statute is rationally based, 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.' " *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 430, 665 N.E.2d 795, 805 (1996), quoting *Oyler v. Boles*, 368 U.S. 448, 456, 7 L. Ed. 2d 446, 453, 82 S. Ct. 501, 506 (1962).

Despite the fact that law enforcement officials may exercise some discretion in enforcement, courts must determine in a particular case whether selective enforcement is actually invidious discrimination in violation of equal protection principles. See *United States v. Falk*, 479 F.2d 616, 624 (7th Cir. 1973) (criticizing "the apparently frequent, and often too easy, practice of simply dismissing all allegations of illegal

discrimination in the enforcement of criminal laws with a reference to *Oyler*"). A criminal defendant initially has the burden of coming forward with facts sufficient to raise a reasonable doubt that the enforcement of the law in question was nondiscriminatory. *City of Collinsville v. Seiber*, 82 Ill. App. 3d 719, 726, 403 N.E.2d 90, 95 (1980); *People v. Kail*, 150 Ill. App. 3d 75, 77, 501 N.E.2d 979, 981 (1986) (in claim of selective enforcement, "challenged State action is presumed to be valid"). If defendant can make the required showing, he is entitled to a hearing on the issue. *Seiber*, 82 Ill. App. 3d at 726, 403 N.E.2d at 90.

Defendant orally moved, during trial, to dismiss the case against him based on a violation of his right to equal protection. Champaign waived argument on the motion, and the trial court denied it. Defendant raised the issue again by posttrial motion. Champaign argued it had met its burden of proof and no prejudicial errors were committed during the trial, but it failed to directly address the issue of whether defendant was denied equal protection. The court denied the motion. We reject defendant's argument. The trial court had the opportunity to hear the witnesses, including defendant, and view the videotape evidence. A reasonable person could conclude defendant was charged with this offense for reasons other than his gender, *i.e.*, defendant was the only person whose naked buttocks are visible in graphic motion as memorialized on the videotape. Defendant and his sexual partner were not similarly situated. Thus, the court did not abuse its discretion in denying the motion.

### 4. *Proposed Change in Standard of Proof*

■ The Supreme Court of Illinois stated "[c]onvictions for municipal ordinance violation are to be established by a clear preponderance of the evidence and do not require proof beyond a reasonable doubt." *City of Chicago v. Joyce*, 38 Ill. 2d 368, 373, 232 N.E.2d 289, 291 (1967). Defendant admits the trial court correctly applied a "clear preponderance of the evidence" standard to his case under existing law but argues for a change in Illinois law. "The doctrine of *stare decisis* 'expresses the policy of the courts to stand by precedents and not to disturb settled points.' " *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 47, 697 N.E.2d 699, 708 (1998), quoting *Neff v. George*, 364 Ill. 306, 308-09, 4 N.E.2d 388, 390-91 (1936). Although *stare decisis* "is not an inexorable command," courts should "detour from the straight path of *stare decisis* only for articulable reasons, and only when the court must bring its decisions into agreement with experience and newly ascertained facts." *Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 510, 641 N.E.2d 525, 529

(1994). Defendant's analysis neither raises facts nor points to any experience that would compel this court to depart from well-established law.

## B. Pretrial Motions

### 1. *Motion To Bar Testimony*

■ Defendant argues the trial court erred in denying his motion to exclude the videotape evidence. Champaign responds defendant has forfeited this issue for review because defendant failed to object to the videotape's introduction. We agree. "The denial of a motion *in limine* does not in itself preserve an objection to disputed evidence that is introduced later at trial. 'When a motion *in limine* is denied, a contemporaneous objection to the evidence at the time it is offered is required to preserve the issue for review.' " *Simmons v. Garces*, 198 Ill. 2d 541, 569, 763 N.E.2d 720, 738 (2002), quoting *Brown v. Baker*, 284 Ill. App. 3d 401, 406, 672 N.E.2d 69, 72 (1996).

Here, as Champaign points out, defendant not only failed to object but stipulated to foundation for the videotape and chain of custody. The record demonstrates defendant expressed his intent to stipulate in a side-bar discussion, and on the record, the court again asked defendant if he had any objection to admitting the tape into evidence. Given these multiple opportunities, we find defendant had no reason to believe he was precluded from raising his objections at trial. *Cf. Lundberg v. Church Farm, Inc.*, 151 Ill. App. 3d 452, 460, 502 N.E.2d 806, 812 (1986) (declining to find waiver where defendant misinterpreted court's ruling on motion *in limine* as conclusively admitting evidence). Defendant forfeited his right to review of the trial court's ruling on the motion.

### 2. *Discovery Order*

■ Defendant argues it was error for the trial court to refuse to enforce its discovery order and compel Champaign to produce copies of handwritten notes of police officers. Champaign has declined to address this issue, arguing defendant's contentions are not supported by the record. However, to support his position that handwritten notes were actually in existence at the time of trial, defendant points to the testimony of Officer Cunningham, who stated, in response to a question from defendant, "I'd have to look back at my notes." Defendant also argues the court "did not complete a due[-]diligence inquiry as to what measures [Champaign] took in determining that the notes no longer existed." "Generally, a trial court's rulings on discovery matters will not be disturbed on appeal absent a manifest abuse of discretion." *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54, 765 N.E.2d 1002, 1007 (2002).

At the hearing on defendant's motion to compel production of officers' notes, the trial court stated in its experience police officers' notes are often destroyed and apparently accepted as true Champaign's affidavit stating no such notes existed. Defendant asks this court to find "no reasonable person" could have adopted this view. *Lutz v. Lutz*, 313 Ill. App. 3d 286, 289, 728 N.E.2d 1234, 1237 (2000). The statement by Officer Cunningham that he would have to "review his notes" is insufficient to persuade this court to make that determination. Defendant failed to renew his motion to compel production after this allegedly inculpatory remark or to further explore this issue with Officer Cunningham. A reasonable person could conclude, from the statement alone, that Officer Cunningham merely answered without reflecting on whether any such notes actually existed. Defendant offers no evidence to prove Champaign was ever in possession of any handwritten notes. See *City of Chicago ex rel. Cohen v. Keane*, 105 Ill. App. 3d 298, 305-06, 434 N.E.2d 325, 330-31 (1982) (not an abuse of discretion for trial court to refuse to sanction party stating they were never in possession of discovery sought). The trial court did not abuse its discretion.

### 3. *Defendant's Second Motion To Dismiss*

■ Defendant further argues the trial court erred in denying his second motion to dismiss, challenging Champaign's change in the language of the complaint against him, because the effect of the amendment, and the later use of the same term in jury instructions, removed an argument in his defense. Specifically, defendant argues it is questionable whether his alleged conduct was in a place "commonly open to the public." He further argues use of the term "public place," instead of "in an area commonly open to the public," negates any argument on this issue. We disagree. Defendant was neither precluded from nor prejudiced against making this argument had he chosen to do so.

First, as Champaign points out, the jury did not see the complaint. Second, the term "public place" was defined for the jury in an instruction given over defendant's objection. That instruction read:

" 'Public place' is defined in the Champaign Municipal Code as follows:

Public place means any park, lake, stream, stadium, athletic field, playground, school yard, street, avenue, plaza, square, bus, train or railroad depot, station terminal, cemetery, open space adjacent thereto *or any other place commonly open to the public*, including but not limited to areas on private property commonly open to the view by the public." (Emphasis added.)

Defendant could easily have argued that because the loading dock

behind Target was not any of the specific places listed in the instruction, the jury could only find him guilty if it found it was a "place commonly open to the public" and the dock was not a place commonly open to the public.

> "A trial court's ruling on a motion for leave to amend a complaint is discretionary, and such determinations will not be overturned on appeal absent an abuse of discretion. [Citation.]
>
> Courts should consider the following factors in determining whether a trial court has abused its discretion in ruling on an amendment to a complaint: (1) whether the proposed amendment would cure a defective pleading, (2) whether the other parties would sustain prejudice or surprise by virtue of the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether previous opportunities to amend the pleading could be identified." *Village of Plainfield v. American Cedar Designs, Inc.*, 316 Ill. App. 3d 130, 140-41, 775 N.E.2d 1002, 1011-12 (2000).

Although defendant is correct in noting Champaign had previous opportunities to amend the pleading, the amendment was nonetheless made prior to trial and in a timely manner. Moreover, defendant was not prejudiced, and the purpose of the amendment was to cure a defective pleading and appropriate. We find the trial court did not abuse its discretion in allowing this change in the complaint to stand.

## C. Trial Court's Evidentiary Rulings

### 1. *Defense Evidence*

■ Defendant argues his exhibits were improperly excluded by the trial court: (1) an index of air temperatures from the University of Illinois College of Atmospheric Sciences, (2) defendant's driving abstract and evidence of his employment, and (3) the driver's license of the female passenger, Cristina Marie Manuel, born November 24, 1972. He also argues the court erred in (4) excluding evidence of the police search of his car, and (5) not permitting the jury to see the videotape in its entirety. "We will not reverse a trial court's decision concerning the admission of exhibits into evidence absent an abuse of discretion." *People v. Davis*, 322 Ill. App. 3d 762, 765, 751 N.E.2d 65, 67 (2001).

We find the trial court did not abuse its discretion in refusing to admit the index of air temperatures since defendant failed to lay a proper foundation. "As with all evidence, 'the proponent of a public record must lay an adequate foundation.' " *People v. Hall*, 314 Ill. App. 3d 688, 698, 732 N.E.2d 742, 750 (2000), quoting *Chicago v. Kautz*, 272 Ill. App. 3d 444, 450, 651 N.E.2d 772, 775 (1995). No testimony was offered regarding the method of preparation or the source of the information. See *Hall*, 314 Ill. App. 3d at 698, 732 N.E.2d

at 750. " ' "If the source of information or the method or circumstances of preparation [of the public record] indicate[s] lack of trustworthiness, the court may bar admissibility." ' [Citations.]" *Kautz*, 272 Ill. App. 3d at 450, 651 N.E.2d at 775. Here, the court was not presented with evidence from which it could make that determination. The court's ruling was correct.

Defendant asserts his driving abstract and evidence of his employment were relevant character evidence. A defendant in a criminal case may offer proof of his good character to establish that his character traits are inconsistent with the commission of the crime charged. *People v. Lewis*, 25 Ill. 2d 442, 445, 185 N.E.2d 254, 256 (1962). We question whether defendant's evidence demonstrated character traits inconsistent with engaging in sexual intercourse in public. More importantly, defendant's evidence was not in the proper form. "Where it is admissible, evidence of character is confined to proof of general reputation at or prior to the alleged offense." *People v. Lucas*, 151 Ill. 2d 461, 484, 603 N.E.2d 460, 470 (1992). Defendant did not offer evidence of his "general reputation." The trial court therefore did not err in excluding defendant's proffered evidence.

Defendant argues the driver's license of his female passenger should have been admitted to demonstrate how the reporting witness could have mistakenly believed defendant was engaging is sex with a minor. However, defendant was not charged with having sex with a minor and the passenger did not testify. The trial court properly excluded the driver's license as irrelevant.

Defendant also argues police officers violated his right to be free from unreasonable searches and seizures under the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV). Defendant points to no evidence illegally obtained as a result of the search and admits he is not seeking to have any evidence suppressed. Instead, defendant argues the trial court's exclusion of evidence that the search took place constitutes reversible error because it would have demonstrated Officer Cunningham's bias. In a related argument, defendant argues the jury should have been allowed to view the videotape admitted into evidence in its entirety. The videotape allegedly contains footage of the search and, defendant argues, "was relevant, as [Officer] Cunningham had been permitted to testify as to his own observations and actions during the investigation, and in order for [defendant] to refute the officer's testimony, [defendant] needed to be able to adequately cross-examine the officer as to his actions at the scene to attack his credibility."

"[E]vidence used to impeach a witness ' "must give rise to the inference that the witness has something to gain or lose by his

testimony." ' " *People v. Sims*, 192 Ill. 2d 592, 625, 736 N.E.2d 1048, 1065 (2000), quoting *People v. Triplett*, 108 Ill. 2d 463, 475-76, 485 N.E.2d 9, 15 (1985), quoting *People v. Phillips*, 95 Ill. App. 3d 1013, 1020, 420 N.E.2d 837, 842 (1981). Defendant admits he did not seek to have any evidence against him suppressed. Therefore, no implication arises that Officer Cunningham might testify falsely to hide allegedly illegal actions. Also, defendant failed to relate the conduct of Officer Cunningham to any motive to testify falsely against defendant as to this offense. " '[A] trial judge has wide latitude to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, or interrogation that is repetitive or of little relevance.' " (Emphases omitted.) *People v. Green*, 322 Ill. App. 3d 747, 759, 751 N.E.2d 10, 20 (2001), quoting *People v. Fierer*, 260 Ill. App. 3d 136, 148, 631 N.E.2d 1214, 1223 (1994). The trial court did not abuse its discretion in limiting defendant's examination of Officer Cunningham. Having concluded that evidence of the interaction between defendant and police was inadmissible as impeachment material, we find the court did not err in not showing the jury the remainder of the videotape.

## 2. Definitions of "Sexual Intercourse"

■ Defendant argues the trial court should have admitted his definition of "intercourse" and instructed the jury as to the definition of this element of the offense, because the term "sexual intercourse" is not defined in the Municipal Code or the Illinois statutes. When there is not a statutory definition, " 'the courts will assume that statutory words have their ordinary and popularly understood meanings.' " *People v. Taylor*, 138 Ill. 2d 204, 212, 561 N.E.2d 667, 671 (1990), quoting *People v. Blair*, 52 Ill. 2d 371, 373, 288 N.E.2d 443, 445 (1972). We find it unquestionable that adults of average intelligence commonly understand the meaning of the term "sexual intercourse." Further, defendant did not submit a jury instruction defining "sexual intercourse." " 'The burden of preparing instructions is primarily on the parties and not the trial court. Generally, the trial court is under no obligation either to give instructions or to rewrite instructions tendered by counsel. A party may not raise on appeal the failure to give an instruction unless he shall have tendered it.' " *People v. Garcia*, 188 Ill. 2d 265, 280, 721 N.E.2d 574, 582 (1999), quoting *People v. Barnard*, 104 Ill. 2d 218, 232, 470 N.E.2d 1005, 1010 (1984). As defendant failed to tender an instruction on the definition of "sexual intercourse," the court did not err in failing to give one.

## D. Prosecutorial Misconduct

### 1. *Improper Remarks During Opening Statement*

■ Defendant next asserts he was prejudiced by Champaign's reference in opening argument to images on the videotape depicting defendant stopping near the rear door to Target and testing the lock. Defendant argues the videotape does not depict these images, Champaign never intended to prove these events occurred, and the statement was made to prejudice the jury by implying defendant was attempting to commit burglary. Champaign responds no prejudice resulted because the jury was instructed that opening statements are not evidence and any statements not based on the evidence should be disregarded.

Defendant admits he did not object to the challenged statements when they were made. Defendant asserts he objected before the judge immediately after Champaign's opening statements. What he actually said was the following:

"Based on the opening *** my concern is more towards the beginning of the tape that *** I was not allowed to see at the viewing that was ordered during discovery.

***

*** I didn't get to see the car come up or whatever else, so I don't know. I don't know if they're going to try to use this later."

The trial court then asked, "Would it be helpful for you to see a portion of this now before we bring the jury in that you feel you haven't seen?" Defendant responded, "That would be."

Clearly, at no point did defendant object in the trial court to these remarks themselves. "Where a timely objection is made at trial, the trial judge can usually correct the error by sustaining the objection and instructing the jury to disregard the improper remark. Failure to object at trial waives those errors which could have been corrected in such a manner." *People v. Flax*, 255 Ill. App. 3d 103, 107, 627 N.E.2d 359, 363 (1993). However, defendant asks this court to review these remarks under the plain-error doctrine.

"[A] reviewing court [may] consider plain errors or defects which affect substantial rights even though the errors were not brought to the trial court's attention. [Citation.] This plain[-]error rule applies where the evidence in a case is closely balanced or where an error is of such magnitude that the defendant has been denied a fair and impartial trial." *Flax*, 255 Ill. App. 3d at 108, 627 N.E.2d at 363-64.

Even if *Flax*, which was a criminal case, applies to this ordinance violation case, we conclude that the plain-error rule does not apply here because the evidence is not closely balanced. Champaign's

evidence included a videotape of what actually occurred. "Based upon the overwhelming strength of the evidence of defendant's guilt, we cannot conclude that the error was of such a magnitude that defendant was denied a fair trial." *Flax*, 255 Ill. App. 3d at 108, 627 N.E.2d at 364.

### 2. *Questioning of Westbrook*

Next, defendant argues he was prejudiced because (1) he did not receive the name of a witness, Troi Westbrook, until two weeks before trial, depriving him of "the opportunity to prepare a meaningful defense"; and (2) the trial court permitted Champaign to question Westbrook beyond laying foundation for the videotape. Champaign fails to address whether Westbrook's testimony exceeded the scope set by the court.

Defendant filed a pretrial motion to limit Westbrook's testimony but never sought to completely bar that testimony. Champaign asserts the trial court denied defendant's motion to limit Westbrook's testimony. We disagree. During the hearing on defendant's motion to limit testimony, the trial court stated the following: "At this point[,] if we're just using Mr. Westbrook as to the laying [of] the foundation as to the videotape, then obviously motion to bar testimony of Troi Westbrook will be denied. If we're going to start going far afield from that, obviously we're going to end up with a problem." The court ruled that to properly establish foundation, Westbrook would have to testify as to what he saw to establish the videotape has not been altered. However, the court did not thereby recant its earlier position that Westbrook's testimony was essentially limited to foundation testimony. See *Kotvan v. Kirk*, 321 Ill. App. 3d 733, 749-50, 747 N.E.2d 1045, 1058-59 (2001) (It was not error for the trial court to limit witness's testimony at trial where court had denied motion *in limine* to limit testimony based on opposing party's assertions as to scope of testimony).

We find much of Westbrook's testimony did, however, go beyond establishing foundation for the videotape. Specifically, Westbrook testified a street outlet is connected to the driveway where this incident took place, described what is in the surrounding area not portrayed on the videotape, and described who uses the driveway and how often. Defendant did not object to any of this testimony. " 'Failure to make proper and timely objection to the admission of evidence claimed to be incompetent or otherwise objectionable or to move to strike it out after its admission *** generally constitutes a waiver of the right to object and cures the error, if any.' " *People v. Camden*, 219 Ill. App. 3d 124, 135-36, 578 N.E.2d 1211, 1220 (1991), quoting *People v. Trefonas*, 9 Ill. 2d 92, 98, 136 N.E.2d 817, 820 (1956). Defendant did object to

Westbrook's monologue on the videotape as it was being made. These objections were properly overruled by the trial court as within the scope of establishing foundation for the videotape. We note further that the court did not permit Westbrook to respond when Champaign asked Westbrook to describe what he saw as the tape progressed. Therefore, defendant forfeited the issue of Westbrook's testimony exceeding the court's order.

### 3. *Assistance of an Assistant State's Attorney*

■ The alleged assistance received by Champaign from an assistant State's Attorney did not create prejudicial error. Defendant states his "contentions lie in the fact that [Champaign] was receiving additional assistance, off the record, and outside the presence of the jury." It is not prejudicial for opposing counsel to consult with another attorney.

## E. Trial Court Bias

### 1. *Dismissal of Potential Juror*

■ Defendant cites *People v. Beasley*, 251 Ill. App. 3d 872, 884, 622 N.E.2d 1236, 1244 (1993), for his position the trial court erred in dismissing *sua sponte* a prospective juror. There, the Fifth District held:

> "[I]f a potential cause challenge exists or if a potential juror says that he cannot be fair, and neither counsel for the plaintiff nor the defendant makes the challenge, the judge should not *sua sponte* dismiss the potential juror. If the judge intends *sua sponte* to dismiss a juror for cause, the trial judge should call counsel to the bench and ask if either of them would like to make a cause challenge, rather than determining for himself that the potential juror should be disqualified." *Beasley*, 251 Ill. App. 3d at 884, 622 N.E.2d at 1244.

However, defendant does not challenge whether the jury was composed of fair and impartial members, "which is all that the defendant is entitled to have serve." *Beasley*, 251 Ill. App. 3d at 885, 622 N.E.2d at 1245. Because defendant does not assert prejudice because of a biased jury, we cannot find error in the court's dismissal of a potential juror. See *People v. Truss*, 254 Ill. App. 3d 767, 779, 626 N.E.2d 1175, 1185 (1993) ("Defendant has offered no evidence that he was prejudiced by the trial court's decision to dismiss this potential juror for cause. Accordingly, we decline to find reversible error").

### 2. *Trial Court's Comments*

■ Defendant alleges bias based on the trial court's rulings on certain evidence and motions, a comment on the length of *voir dire*,

the court's conduct on Champaign's objections during trial, and the length of the trial. The court's comment on the length of *voir dire* ("We have finally reached the final panel") did not refer to defendant and does not imply on its face that defendant was responsible for its duration. We agree with Champaign that it is difficult to find this comment, without more, could have resulted in prejudice to defendant when the jury panels were questioned by the court, Champaign, and defendant. Similarly, defendant complains the trial was allowed to proceed "beyond normal working hours," which may have caused the jury to reach a hasty verdict. But defendant does not allege how that fact could have been attributed to him by the jury. The jury may have been biased against the court for not permitting it to go home and return for a second day or against Champaign for charging defendant in the first place.

Defendant argues the trial court's bias is demonstrated because "[w]hile the [c]ourt held [defendant] to strict compliance with the [r]ules of [e]vidence, when [Champaign] faltered by making the wrong objection[,] the [c]ourt would often provide their desired outcome by stating a plausible objection and ruling in favor of [Champaign] on the [c]ourt's own objection." Defendant notes instances where Champaign made an objection and the court sustained on grounds not raised. "[A] court is permitted to make rulings *without* objections from counsel." (Emphasis added.) *People v. Thigpen*, 306 Ill. App. 3d 29, 40, 713 N.E.2d 633, 641 (1999). Here, Champaign did raise an objection. Even if actions by the court had been improper, defendant must demonstrate prejudice to merit reversal. *Thigpen*, 306 Ill. App. 3d at 40, 713 N.E.2d at 641. To demonstrate prejudice, defendant must show the alleged error was a material factor in his conviction. *Thigpen*, 306 Ill. App. 3d at 40, 713 N.E.2d at 641. Based on the evidence presented in this case, we find defendant cannot demonstrate prejudice based on the court's conduct.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER and STEIGMANN, JJ., concur.